# EXHIBIT A

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
**New Hampshire**

18 Low Avenue
Concord NH 03301
(603) 224-5591
aclu-nh.org

**Devon Chaffee**
*Executive Director*

October 29, 2025

<u>Via DHS Secure Release</u>

U.S. Immigration and Customs Enforcement
Attn: FOIA Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009

Re:   FREEDOM OF INFORMATION ACT REQUEST: 287(g) Agreement Training Materials
       (Fee Waiver & Expedited Processing Requested)

Dear FOIA Officer:

The American Civil Liberties Union Foundation of New Hampshire ("ACLU-NH")[1] submits this Freedom of Information Act ("FOIA") request for records related to materials used by U.S. Immigration and Customs Enforcement ("ICE") to train law enforcement officers from local law enforcement agencies, such as sheriff deputies, police department, or university campus police, including all agencies located in New Hampshire, that have entered into memoranda of understanding with ICE to enforce immigration law under 8 U.S.C. § 1357(g) (hereinafter "287(g) Agreements").

The ACLU-NH seeks a waiver of any applicable fees pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k) because the information requested will contribute to the public's understanding of the local law enforcement officers' duties and limits established by ICE's instructions, as well as how ICE instructs local law enforcement officers about individuals' civil rights.

The ACLU-NH also seeks expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E), as further explained below.

I.   REQUEST FOR INFORMATION

The ACLU-NH seeks the following records under 5 U.S.C. § 552(a)(3):

1.   Materials[2] currently used by ICE in its instruction courses to train local law enforcement officers from agencies, including NH-based officers and agencies, that signed 287(g) Agreements for all active models of the 287(g) program, as well as materials used during "refresher" trainings for designated immigration officers from

---

[1] The American Civil Liberties Union Foundation of New Hampshire is a 501(c)(3) organization that defends and promotes the fundamental principles embodied in the Bill of Rights and the U.S. and New Hampshire Constitutions. In furtherance of that mission, the ACLU-NH regularly conducts research into government activities in New Hampshire.
[2] The term "materials" includes, but is not limited to, manuals or other similar documents; presentations; PowerPoint slideshows or pdf copies of presentation slides; trainer's notes; training guidelines/objectives, assessments tools, handouts; training video or audio content; and recording of the online trainings.

1

        local law enforcement agencies participating in any active models of the program that require such refresher training.

2. Version of materials used by ICE from January 20, 2025 to the present time, in its instruction courses to train local law enforcement officers from agencies, including NH-based officers and agencies, with active 287(g) Agreements for all models of the 287(g) program, as well as materials used during "refresher" trainings for designated immigration officers from local law enforcement agencies participating in any active models of the program that require such refresher training.

## II. FORMAT OF PRODUCTION

The records requested herein also fall under the proactive disclosure provisions of the FOIA. *See* 5 U.S.C. § 552(a)(2). Courts state that documents subject to 5 U.S.C. § 552(a)(2) must be "automatically available for public inspection." *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 756 (D.C. Cir. 1978). As such, the ACLU-NH asks that ICE publish these records on its website as required by the statute.

Alternatively, the ACLU-NH seeks responsive electronic records in a machine-readable, native file format, with all metadata and load files. If terms or codes are contained in the materials and are not defined, please provide a glossary or other descriptive records containing definitions of acronyms, numerical codes, or terms contained in the records responsive to this request. We request that ICE produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits.

## III. FEE WAIVER REQUEST

Because the ACLU-NH seeks a proactive disclosure of these records, the fee provisions of 6 C.F.R. § 5.11 do not apply to these types of records. Should ICE process the request exclusively under 5 U.S.C. § 552(a)(3), however, the ACLU-NH seeks waiver of any applicable fees because the information sought is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the [requesters] " 5 U.S.C. § 552(a)(4)(A)(iii).

The public interest criterion is satisfied when (1) the request concerns operations or activities of the government; (2) disclosure is likely to contribute to an understanding of government operations or activities; (3) disclosure contributes to an understanding of the subject by the public at large; and (4) disclosure is likely to contribute significantly to such understanding. 6 C.F.R. § 5.11(k)(2).

The first prong of the public interest test is clearly satisfied by this request. The requested records seek further information about the duties and responsibilities bestowed upon local law enforcement officers, including NH-based officers, carrying out immigration-related tasks under 287(g) agreements.

1. The requested records concern the operations and activities of the government.

The records sought clearly concern the operation of the Department of Homeland Security (DHS) and ICE, its subcomponent. Informational materials about 287(g) Agreements published by ICE state that local law enforcement agencies, including NH-based agencies, that decide to join the program work under ICE's supervision and oversight.[3] These informational materials also specify that ICE will provide virtual

---

[3] Enforcement and Removal Operations, Immigration and Customs Enforcement, ERO Facts 287(g) Task Force Model (March 2025), https://www.ice.gov/doclib/about/offices/ero/287g/factsheetTFM.pdf.

training for participating law enforcement agencies.[4]  Records of the training will shed light on how ICE is operating these programs and on the information passed from ICE to the local law enforcement agencies that will conduct arrests on ICE's behalf.  Thus, the records requested clearly concern the operations of ICE, which is an agency of the U.S. government.

        2.        Disclosure is "likely to contribute" to an understanding of government operations and activities

Disclosure of the requested records is likely to contribute to an understanding of how local law enforcement agencies, including NH-based agencies, are supposed to carry out arrests under the powers delegated to them by ICE under the agreements.  ICE and local law enforcement's (including NH-based) statements to the press about their officers' power under 287(g) Agreements have been inconsistent.  In Ohio, for example, the sheriff of Butler County, which recently signed a 287(g) agreement, said that the sheriff's deputies trained under the program are basically ICE agents.[5]  Likewise, upon finalizing a 287(g) agreement for the South Dakota Division of Criminal Investigation (DCI), the South Dakota Attorney General said that previously the DCI was at ICE's mercy on when they were going to respond, how they were going to address it, and when they were going to begin deportation, but "now that we are part of the task force, we have the ability to do that."[6]  ICE, however, states that the 287(g) Task Force Model gives officers "limited" immigration enforcement authority while performing their routine policing duties, such as identifying undocumented immigrants during a traffic stop and sharing that information with ICE, and ICE supervisors are supposed to determine next steps after the arrests are made.

Additionally, local law enforcement agencies differ on how they define their duties under the agreement. Sheriff Richard Jones, of Butler County, Ohio, said he views the officers trained under the 287(g) program as ICE "agents."  By contrast, the Miami-Dade County Sheriff Rosie Cordero-Stutz said her deputies would not ask for proof of immigration status during traffic stops but would do so only if that stop leads to an investigation of more serious crimes or an arrest.[7]

Further, ICE's website lacks clarity as to when the 287(g) agreements in a particular jurisdiction are active.  The Wells Police Department in Maine stopped training officers under the 287(g) agreement, and as such, did not have officers authorized to carry out immigration enforcement duties under 287(g).[8]  However, ICE's website still shows that the Wells Police Department has an active 287(g) Agreement.  Accordingly, there is a lack of understanding about what constitutes an active 287(g) Agreement.

The public also lacks a clear understanding about the duration of the training local law enforcement officers receive before they can begin their duties under the 287(g) Agreements.  The ICE pamphlet about

---

[4] *See id*.

[5] Gabriel Kramer, *3 Ohio sheriff's departments ink agreements with ICE to aid in deportations*, THE OHIO NEWSROOM, May 20, 2025, https://www.statenews.org/section/the-ohio-newsroom/2025-05-20/3-ohio-sheriffs-departments-ink-agreements-with-ice-to-aid-in-deportations.

[6] Grant Green, *AG Jackley and Minnehaha Sheriff Milstead detail 287(g) program*, DAKOTA NEWS NOW, May 27, 2025, https://www.dakotanewsnow.com/2025/05/28/ag-jackley-minnehaha-sheriff-milstead-detail-287g-program/.

[7] Ana Ceballos, *What's the 287(g) task force model? Your guide to the immigration enforcement program*, MIAMI HERALD, March 12, 2025, https://www.miamiherald.com/news/local/immigration/article301915479.html.

[8] Russ Reed, *Wells Police Department pauses ICE training as Maine Legislature weighs bill*, WMTVW8, May 21, 2025, https://www.wmtw.com/article/wells-maine-police-department-pauses-ice-agreement/64840621.

the program states that officers must receive 40 hours of training.  However, a report from March 7, 2025, indicates that DHS told reporters the training is only eight hours.[9]

Training provided to local law enforcement agencies by ICE would augment the limited, and often contradictory, information agencies have about their duties under these agreements.

> 3. Disclosure of the requested information will contribute to the understanding of the public at large, as opposed to the individual understanding of the requester or a narrow segment of interested persons.

The ACLU-NH plans to contextualize, analyze, and report on any record obtained as a result of this request, as well as share documents obtained on the ACLU-NH's websites, emails to supporters, and other means of distribution.  Of course, as a nonprofit organization, the ACLU-NH will publish these materials free of charge in order to disseminate information as widely as possible about how local law enforcement agencies should execute their duties under 287(g) Agreements.  Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F. 3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

> 4. Whether the contribution to public understanding of government operations or activities will be "significant."

Due to the lack of information about the specific training local law enforcement officers receive to become deputized under the 287(g) Program, the records requested will significantly contribute to the public's understanding of ICE's operation of this program. The federal district court for the District of Columbia has concluded that efforts by requesters to analyze and disseminate information that brings to light agency actions are significant, particularly in light of Congress's intent to encourage an "open and accountable government" under the FOIA fee waiver provisions. *See Citizens for Resp. & Ethics in Washington*, 593 F. Supp. 2d 261, 271 (D.D.C. 2009).  The ACLU-NH seeks to have the records responsive to this request published on ICE's website so that the public could easily access the information about the protocols designated immigration officers should follow when exercising their authority under 287(g) agreements. Publication of these records in this manner would significantly contribute to the public's understanding of these activities.

> 5. Whether the requester has a commercial interest that would be furthered by the requested disclosure.

The ACLU-NH is not filing this Request to further its commercial interest.  As described above, any information disclosed by the ACLU-NH as a result of this FOIA Request will be available to the public at no cost.  Thus, a fee waiver would fulfill Congress's legislative intent in amending the FOIA.  *See Judicial Watch, Inc. v. Rossotti*, 326 F. 3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

---

[9] Claudia Levens, *Washington and Winnebago county sheriff's departments sign agreements to work with ICE*, MILWAUKEE JOURNAL SENTINEL, March 7, 2025, https://www.jsonline.com/story/communities/north/2025/03/07/washington-and-winnebago-county-sheriffs- offices-sign-ice-agreements/81624134007/.

4

6. Whether the magnitude of any identified commercial interest to the requester is sufficiently large in comparison with the public interest in disclosure, that disclosure is primarily in the commercial interest of the requester.

Finally, the public interest in disclosing the records is compelling in light of the misinformation and lack of information about the training that local law enforcement officers receive under 287(g). As explained above, the ACLU-NH has no commercial interest in ICE's disclosure of the requested records, and nonprofit organizations such as the ACLU-NH enjoys a presumption that they have no commercial interests. *See Am. Ctr. for Law & Justice*, 573 F. Supp. 3d 78, 84 (D.D.C. 2021). The information is crucial because the public must know how local law enforcement officers will carry out their duties under the 287(g) agreements, particularly if they will be authorized to request proof of immigration status during routine enforcement activity such as traffic stops. This information not only impacts noncitizens who may be arrested under the newly acquired authority granted to local law enforcement officers of recently signed 287(g) agreements, but it can also affect U.S. citizens, legal permanent residents, and individuals with legal status in the United States who may be subject to undue questioning by officers who fail to follow the training.

## IV. EXPEDITED PROCESSING

The ACLU-NH requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[10] There is a "compelling need" for these records, as defined in the statute because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

1. The ACLU-NH is an organization primarily engaged in disseminating information to inform the public about actual or alleged government activity.

The ACLU-NH is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[11] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[12]

The ACLU-NH regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news, and the ACLU-NH staff are interviewed frequently for news stories about documents released through the ACLU-NH FOIA requests.

Similarly, the ACLU-NH publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public. The ACLU-NH also

---

[10] *See* 6 C.F.R. § 5.5(e)(1).
[11] *See* 6 C.F.R. § 5.5(e)(1)(ii).
[12] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. U.S. Dep't of Defense*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

regularly publishes "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU-NH publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* http://www.aclu-nh.org/en/NEWS.

The ACLU-NH plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use, and the ACLU-NH plans to disseminate the information disclosed as a result of this Request to the public at no cost.

2. The records sought are urgently needed to inform the public about actual or alleged government activity.

As explained in the fee waiver request section, these records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[13]

Given the foregoing, the ACLU-NH has satisfied the requirements for expedited processing of this Request.

*     *     *

Pursuant to applicable statutes and regulations, the ACLU-NH expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).

If the Request is denied in whole or in part, the ACLU-NH asks that you justify all deletions by reference to specific FOIA exemptions. The ACLU-NH expects the release of all segregable portions of otherwise exempt material. The ACLU-NH reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

ACLU Foundation of New Hampshire
c/o SangYeob Kim
18 Low Ave, # 12
Concord, New Hampshire 03301
sangyeob@aclu-nh.org
603-333-2081

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

---

[13] *See* 6 C.F.R. § 5.5(e)(1)(ii).

Respectfully,

_____
SangYeob Kim

7